IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Michael Wade Herron, | ) | Civil Action No. 8:15-cv-01910-JDA |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge [Doc. 6]; and the Honorable J. Michelle Childs's January 15, 2016 Order of reference [Doc. 23]. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for supplemental security income ("SSI").[1]  For the reasons set forth below, the decision of the Commissioner is reversed and remanded for administrative action consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In March 2012, Plaintiff filed an application for SSI, alleging disability beginning December 1, 2008.[2]  [R. 158–63.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 104–08, 114–16.]  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on October 24, 2013, ALJ Frances W. Williams conducted a hearing on Plaintiff's claims.  [R. 25–76.]

The ALJ issued a decision on December 12, 2013, finding Plaintiff not disabled.  [R. 9– 24.]  At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since March 22, 2012, the application date.  [R. 14, Finding 1.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: depression, anxiety, personality disorder, and mild contractures of the two fingers of the left non-dominant hand.  [R. 14, Finding 2.]  The ALJ also found Plaintiff had a history of a right ankle fracture in 2007.  [R. 14.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 15, Finding 3.]  The ALJ specifically considered Listings 1.02, 12.04, 12.06, and 12.08.  [R. 15–16.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform

---

[2] At the hearing before the Administrative Law Judge, Plaintiff, through counsel, amended the alleged onset date to November 1, 2011.  [R. 28.]

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> medium work as defined in 20 CFR 416.967(c). Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently. The claimant can perform frequent, not constant, fingering with the left non-dominant hand. The claimant is limited to unskilled work with no direct interaction with the public and only occasional team type interaction with co-workers.

[R. 16, Finding 4.]  At Step 4, the ALJ noted Plaintiff was unable to perform his past relevant work as a carpenter [R. 20, Finding 5]; but based on his age, education, RFC, and the testimony of a vocational expert ("VE"), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform  [R. 20, Finding 9].  On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act since March 22, 2012, the date the application was filed.  [R. 21, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined review.  [R. 1–6.]  Plaintiff filed this action for judicial review on May 5, 2015. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1. The ALJ failed to properly evaluate the testimony of Plaintiff's mother [Doc. 16 at 8–11];

2. The ALJ erred in rejecting the opinion of Plaintiff's treating psychiatrist regarding Plaintiff's ability to work as set forth in his GAF scores [*id*. at 11–15];

3. The jobs identified by the VE in response to the ALJ's hypothetical are precluded by nonexertional limitations included in the hypothetical [*id*. at 15–16]; and

4. The ALJ erred in finding Plaintiff's ankle fracture was "not severe" [*id*. at 16–18].

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that:

1.    Substantial evidence supports the ALJ's credibility determination including the ALJ's consideration of lay testimony and the side effects of Plaintiff's medications [Doc. 17 at 13– 19];

2.    Substantial evidence supports the ALJ's evaluation of the treating physician's GAF scores [*id*. at 19–23];

3.    Substantial evidence supports the hypothetical proffered to the VE [*id*. at 23–27]; and

4.    Substantial evidence supports the ALJ's determination at Step Two where Plaintiff failed to prove that his right ankle limited his basic work activities [*id*. at 27–30].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

6

may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is

---

2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 416.920.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

9

**B.**    ***Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.**    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without

considering the claimant's age, education, and work experience.[5]     20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]   20

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).   A nonexertional limitation is one that

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

---

affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. § 416.969a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

opinion, 20 C.F.R. § 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v.*

14

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

15

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. § 416.928.  Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.

Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,

16

> severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

17

## APPLICATION AND ANALYSIS

**Lay Witness Testimony**

Plaintiff contends the ALJ improperly ignored the testimony of his mother in evaluating the evidence of record related to his RFC and his credibility. [Doc. 16 at 10–11.] Plaintiff argues that SSR 96-7p requires the ALJ to consider the entire case record, including information provided by other persons about Plaintiff's symptoms and how they affect him. [*Id*.] The Commissioner argues the SSR 06-3p does not mandate the explicit weighing of third-party lay testimony and that the testimony of Plaintiff's mother was duplicative of Plaintiff's own testimony. [Doc. 17 at 16.] Thus, the Commissioner contends, any failure of the ALJ to discuss this testimony is "harmless error." [*Id*. at 17.]

Determining whether an individual is disabled by pain or other symptoms is a two-step process. First, an ALJ must determine whether a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 416.929(b); SSR 96–7p; *Craig*, 76 F.3d at 591–96 (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." *Craig*, 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id*. at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96–7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or

18

about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96–7p.

If an ALJ rejects a claimant's testimony about his pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96–7p. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

When making a pain and credibility assessment, an ALJ "must consider the entire case record, including . . . statements and other information provided by . . . other persons about the symptoms and how they affect the individual." SSR 96–7p. Other persons may include non-medical sources such as spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 416.913(d). These lay witnesses "may provide [statements] about how the symptoms affect [a claimant's] activities of daily living and his ability to work . . . ." 20 C.F.R. § 416.929(a). Where a lay witness's testimony merely repeats the allegations of a plaintiff's own testimony and is likewise contradicted by the same objective evidence discrediting the plaintiff's testimony, specific reasons are not necessary for dismissing the lay witness's testimony. *See Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995); *Carlson v. Shalala*, 999 F.2d 180 (7th Cir. 1993);

19

*Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process. *See Craig*, 76 F.3d at 591–96. The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms he alleged, but determined that Plaintiff's testimony "concerning the intensity, persistence and limiting effects" of his symptoms was "not credible to the extent" the testimony was inconsistent with the ALJ's RFC determination. [R. 17.]

Plaintiff testified that he has difficulty focusing and concentrating for any significant period of time. Specifically, Plaintiff testified that he loses his train of thought and cannot focus when watching television or football games. [R. 45.] Plaintiff testified he watches half a movie but does not know what happened in the movie. [*Id*.] Plaintiff also testified that he forgets to take his medicine until he is reminded by his mother [R. 46] and also forgets to bathe for extended periods of time [R. 48]. Further, Plaintiff testified that he cuts grass in stages—"little bit here and little bit there"—because he gets bored. [R. 53.] Plaintiff's mother, Carolyn Herron ("Mrs. Herron"), testified that Plaintiff is withdrawn and scared to be around people in public. [R. 56.] She testified that, when Plaintiff comes to her house from the building he lives in located in her backyard, he looks to see if anyone is there; if so, he turns around and goes back to his building. [R. 57.] Mrs. Herron also testified that Plaintiff is only able to sit and watch a movie with her for 15 to 20 minutes before he just sits and stares at the wall or floor. [R. 61.] She testified that she will ask him about what he just watched and he will not know. [*Id*.] Mrs. Herron testified that Plaintiff cannot concentrate or focus and, when she gives him a task like raking the front yard, after

about 15 to 20 minutes, "he just can't."  [*Id*.]  With respect to his grooming, Mrs. Herron

testified that Plaintiff used to be well groomed but that now she has to remind him to clean

up, shampoo his hair, and shower.  [R. 62.]

In considering Plaintiff's credibility and RFC, the ALJ mentioned neither Plaintiff's

nor Mrs. Herron's testimony regarding Plaintiff's inability to focus on tasks or watch

television or a movie for more than 15 to 20 minutes.  In finding Plaintiff's mental condition

not as limiting as alleged, the ALJ noted that there was no evidence of required in-patient

hospitalization; a report of Plaintiff feeling better with regard to the depression and anxiety

in December 2011; a January 2012 report that Plaintiff was getting out more and visiting

his grandmother; a June 2012 report that Plaintiff's mental health was stable but with a

great deal of stress; and a July 2012 consultative psychological exam where Plaintiff could

recall three out of three objects from immediate memory after delay.  [R. 17.] The ALJ also

noted no evidence of psychosis and that Plaintiff's attention was intact.  [*Id*.]  The ALJ

acknowledged that social stressors affected Plaintiff's mental health but that he continued

to be stable and that his medications were working well.  [R. 18.] The ALJ concluded that,

"[w]ith regard to the claimant's mental health, the record noted some moderate limitations.

However, limitations to unskilled work with no direct[] interaction with the public and only

occasional team type interaction with co-workers adequately accommodated these

limitations."  [R. 20.]

In his hypothetical to the VE, the ALJ included limitations to medium work with

frequent, not constant, fingering or fine manipulation with the left non-dominant hand and

unskilled work tasks with no direct interaction with the public and occasional team type

interaction with coworkers.  [R. 69–70.]  Based on these limitations, the VE concluded

there was work available in the national economy. [R. 70.] If Plaintiff was unable to maintain contact with coworkers and/or supervisors for more than an hour or two out of the day, the VE concluded there would be no jobs available for Plaintiff. [R. 72.]

The Court understands the ALJ is not required to mention his evaluation of Mrs. Herron's testimony under circumstances where her testimony "merely repeats the allegations of a Plaintiff's own testimony and is likewise contradicted by the same objective evidence discrediting the plaintiff's testimony"; however, the Court is unable to find the ALJ's reasoning for dismissing the testimony of record by either Plaintiff or Mrs. Herron regarding Plaintiff's inability to focus for long periods of time and/or to be around people outside of his immediate family. Although the ALJ cites treatment notes indicating Plaintiff's attention was intact, there is no discussion regarding whether this finding was sufficient to support a conclusion that Plaintiff possessed the concentration, persistence, or pace to work for eight hours a day.

The Court finds Plaintiff's argument that the ALJ erred in considering the testimony of Mrs. Herron persuasive in that the ALJ did not adequately explain the consideration and dismissal of Plaintiff's claims of limitations in his ability to persist or stay on task for eight hours during a work day. Either the ALJ found the testimony was worthy of no weight and failed to explain the basis for that reasoning or the ALJ failed to consider this evidence. In sum, the ALJ's decision fails to logically explain how Plaintiff's RFC was determined. Accordingly, the Court is unable to conclude that the ALJ's decision with respect to the RFC assessment is supported by substantial evidence. Consequently, remand for further explanation by the ALJ is necessary.

**Remaining Allegations of Error**

Because the Court found the ALJ's failure to properly explain the consideration of testimony by Plaintiff and Mrs. Herron related to Plaintiff's limitations in concentration is sufficient grounds to remand this matter for further consideration, the Court declines to address Plaintiff's remaining allegations of error.  On remand, however, the ALJ should take Plaintiff's remaining allegations of error into consideration.  The Court notes that although the ALJ appeared to account for Plaintiff's mental impairments by limiting him to unskilled work, the Fourth Circuit Court of Appeals' holding in *Mascio v. Colvin* , 780 F.3d 632, 638 (4th Cir. 2015), may require the ALJ to do more.[8]  On remand, the ALJ is directed to explain the consideration of the effect of Plaintiff's moderate limitations in concentration on the RFC evaluation in accordance with *Mascio*, including presenting this limitation to the VE in determining the availability of work in the national economy for Plaintiff in light of all his medically supported limitations.

---

[8]In *Mascio*, the claimant asserted that the ALJ presented a legally insufficient hypothetical to the VE because it failed to include the claimant's mental limitations.  780 F.3d at 637.  The ALJ found the claimant had an adjustment disorder and also that she had moderate difficulties with concentration, persistence, or pace as a side effect of her pain medication.  *Id.* at 638.  However, the ALJ did not include anything about the claimant's mental limitations in the hypothetical to the VE.  *Id.* at 637.  The court agreed with other circuits that have held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,'" *id.* at 638 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that the Eleventh Circuit joined the Third, Seventh, and Eighth Circuits)), and remanded the case because the ALJ gave no explanation as to why the claimant's moderate limitation in concentration, persistence, or pace did not translate into a limitation in her RFC, *id.*

23

**CONCLUSION**

Wherefore, based upon the foregoing, it is ORDERED that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Order.

IT IS SO ORDERED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

August 5, 2016
Greenville, South Carolina